OPINION
{¶ 1} The state of Ohio initially charged defendant-appellant, Simon M. Martin, with two counts of robbery in connection with an incident at a Save Way Market. The first count of the indictment alleged robbery as a second degree felony in violation of R.C. 2911.02(A)(2) (inflict, attempt or threaten to inflict physical harm in attempting a theft offense). The second count alleged robbery as a felony of the third degree contrary to R.C. 2911.02(A)(3) (use or threaten the immediate use of force in attempting a theft offense). Appellant entered a plea of not guilty to the indictment and the court scheduled the case[1] for trial.
{¶ 2} On the originally scheduled trial date, the parties discussed the status of plea negotiations on the record. After the trial court explained that it was continuing the matter, the prosecuting attorney announced his intention to seek an additional indictment for kidnapping based upon the same incident addressed by the original indictment. Subsequently, the Franklin County Grand Jury indicted appellant on one count of kidnapping. This indictment alleged that, by force, threat or deception, appellant restrained a person named Ronnie Rose of his liberty with the purpose to hold Rose for ransom, or as a shield or hostage.
{¶ 3} Appellant appeared before the trial court on the date his trial was rescheduled on the robbery charges. He was arraigned at that time on his new case[2] and entered a plea of not guilty. The parties agreed that these cases should be consolidated for trial and the court acted accordingly. Over appellant's objection, the court continued the trial at the prosecutor's request to allow an additional opportunity to locate and produce Ronnie Rose as a witness.
{¶ 4} After the jury trial of the consolidated cases finally began, the state called only two witnesses and introduced a copy of a store security tape. The first witness was Mueen Hussein, the store clerk, who stated that he owned the Save Way Market where the incident occurred. Hussein identified appellant, described his actions and qualified the video tape as a prosecution exhibit. Columbus Police Officer, Chris Waddle, testified that he responded to the Save Way Market shortly after the incident, secured the scene and talked to a witness. While viewing the video recording, Officer Waddle identified that witness as a man who said his name was Ronnie Rose. Ronnie Rose did not testify. The defense did not present any evidence.
{¶ 5} At the conclusion of the trial, the jury returned the following verdicts: not guilty on the second degree felony count of robbery, but guilty of a lesser-included offense of attempted theft, a misdemeanor of the second degree; not guilty on the third degree felony count of robbery, but guilty of a lesser-included offense of attempted theft; and not guilty on the kidnapping count, but guilty of a lesser-included offense of abduction, a felony of the third degree.
{¶ 6} The trial court proceeded immediately to sentence appellant and ordered that he serve a three-year term of incarceration at the Ohio Department of Rehabilitation and Correction on the abduction conviction. On the attempted theft conviction from the first count of the original indictment, the court ordered appellant to serve a term of 90 days at the Franklin County Corrections Center, with that sentence to run concurrently with the three-year term. Under an election by the prosecutor, as required, the court did not enter a sentence on the second attempted theft conviction. After the court filed judgment entries reflecting these verdicts and sentences, appellant filed a timely appeal from those judgments and presents the following assignments of error for this court's consideration:
{¶ 7} "Assignment of Error No. 1: The trial court erred and thereby deprived Appellant of due process of law as guaranteed by theFourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by overruling Appellant's Crim.R. 29 motion for judgment of acquittal, as the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt each and every element of abduction.
{¶ 8} "Assignment of Error No. 2: The trial court erred and thereby deprived Appellant of due process of law as guaranteed by theFourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding Appellant guilty, as the verdict for the charge of abduction was against the manifest weight of the evidence.
{¶ 9} "Assignment of Error No. 3: The prosecuting attorney's remarks during closing arguments constituted prosecutorial misconduct which deprived Appellant of a fair trial in violation of theFourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
{¶ 10} "Assignment of Error No. 4: The failure of Appellant's counsel to raise the issue of venue constituted ineffective assistance of counsel, thereby depriving appellant of his rights as guaranteed by theSixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
{¶ 11} "Assignment of Error No. 5: The trial court erred in permitting hearsay testimony relating to the identity of the alleged abductee in this case, thereby depriving Appellant of his right of confrontation in violation the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
{¶ 12} "Assignment of Error No. 6: The trial court erred in failing to instruct the jury with respect to the lesser included offense of unlawful restraint."
{¶ 13} We will consider assignments of error one, two and five together because they are interrelated, and will discuss the remaining assignments in the order presented by appellant.
{¶ 14} In the first assignment of error, appellant asks us to reverse his abduction conviction on the grounds that the trial court erred in overruling his Crim.R. 29 motion for judgment of acquittal. He contends that the evidence presented was insufficient as a matter of law to sustain a conviction of that offense. By his second assignment of error, appellant urges reversal arguing that the judgment of conviction on the abduction offense was against the manifest weight of the evidence. In his fifth assignment of error, appellant argues that the trial court should have excluded evidence of the identity of the victim of the abduction as inadmissible hearsay.
{¶ 15} The relevant elements of an abduction offense, as set forth in R.C. 2905.02(A) are: (1) knowingly; (2) restrain the liberty of another person by force or threat under circumstances which create a risk of physical harm to the victim or place the other person in fear; (3) without privilege to do so; and (4) venue. Appellant focuses primarily on three areas where he suggests that proof is lacking: (1) venue — whether appellee proved that the crime was committed in Franklin County, Ohio; (2) use of force — whether appellee showed that appellant restrained another person of his liberty by force or threat; and (3) identity of the victim — whether appellee needed to prove that the alleged victim of the abduction was named Ronnie Rose, and whether the testimony offered in that regard was admissible. Except for the venue issue, appellant does not challenge the attempted theft convictions.
{¶ 16} The standard for reviewing a trial court's denial of a Crim.R. 29 motion for judgment of acquittal is the same as the standard we apply in deciding if the evidence of record is sufficient to sustain a conviction. "Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." State v. Johnson, Franklin App. No. 01AP-1312, 2002-Ohio-3248, at ¶ 21. To reverse the trial court's denial of a Crim.R. 29 motion for judgment of acquittal we must, after viewing the evidence in a light most favorable to the prosecution, determine that a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Sufficiency is a test of adequacy, a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386, citing State v. Robinson (1955), 162 Ohio St. 486. In deciding if the evidence is sufficient, we neither resolve evidentiary conflicts in favor of the accused nor assess the credibility of the witnesses, as both functions are reserved to the trier of the fact. State v. Willard (2001),144 Ohio App.3d 767, 777-778, citing State v. Millow (June 15, 2001), Hamilton App. No. C-000524. A conviction based upon legally insufficient evidence amounts to a denial of due process, Thompkins, at 386, citing Tibbs v. Florida (1982), 457 U.S. 31, 45; and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying the defendant. Willard, at 777, citing State v. Freeman (2000),138 Ohio App.3d 408, 424.
{¶ 17} A manifest weight argument, on the other hand, requires us to engage in a limited weighing of the evidence to determine if there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. State v. Brooks (Sept. 25, 2001), Franklin App. No. 00AP-1440, citing Thompkins, at 387. Issues of witness credibility and how much weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. State v. Bezak (Feb. 18, 1998), Summit App. No. 18533, citing State v. DeHass (1967),10 Ohio St.2d 230, 231. Still, we must review the entire record. With caution and deference to the role of the trier of fact, this court acts as if it were a thirteenth juror, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Our discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. Bezak, citing Thompkins, at 387.
{¶ 18} During the trial of this case, Mueen Hussein testified that he opened his store on the 4th of July between 8:00 and 8:30 a.m., later than normal due to the holiday. About one hour later, appellant entered the premises, approached the counter, then wandered around the store. He caught Hussein's attention by approaching the counter several more times without merchandise, allowing other customers to go in front of him in line and then continuing to roam about the store. Suspicious of appellant's intentions, Hussein moved a hand gun hidden beneath the counter for easier access. Appellant approached the counter again and asked for a carton of cigarettes. He permitted another customer, later identified by Officer Waddle as Ronnie Rose, to pay for his own merchandise, then walked away from the counter again. As Hussein made change for the other customer, appellant turned and hurried to the counter, reaching over it in the direction of the cash register. Hussein testified that appellant stated: "Give me all of the money or I will kill you." (Tr. at 47.)
{¶ 19} The store owner then testified:
{¶ 20} "At that point I grabbed my gun and I pointed it at him. He grabbed the other customer that was in the store and used him as a shield, you know, hiding behind him.
{¶ 21} "* * *
{¶ 22} "* * * He tried to hide behind him, and he threw him on the floor and went out the door, and I jumped across the counter and got him outside the store." (Tr. at 47.)
{¶ 23} Hussein continued that, once he caught appellant outside the store, appellant tried to wrestle with him. He fired one warning shot in the air to calm appellant down and let him know, "I am in charge of the situation now." (Tr. at 47.) The store owner acknowledged that appellant was not armed and did not take anything from the store and, on cross-examination, explained that the wrestling resulted from appellant struggling to get away from his grasp. Hussein also testified that he flagged down a police officer who stopped and arrested appellant.
{¶ 24} Hussein identified the store security tape prior to its introduction. The stationary security camera was located on a wall behind the counter that customers approach to make their purchases. More than 40 customers, including two police officers, were recorded at the counter prior to appellant entering the store. The tape shows appellant, wearing a white T-shirt, and is generally consistent with the store owner's testimony; however, the audio is of poor quality, making it unclear whether appellant uttered the threat attributed to him by the store owner or if he simply referred to the money. The tape shows that, after Hussein drew and pointed his firearm, appellant moved to his right and behind the other customer at the counter. He then quickly moved back to his left, putting his right hand on the other customer's upper right arm, and both then moved quickly to their left and downward, disappearing almost immediately to the floor behind the store counter. What happened between the two of them while on the floor was not within the view of the security camera.
{¶ 25} The tape next shows a person in a white shirt moving to his right, toward the door, and the store owner climbing over the counter and following in that direction. Shouting and a single gun shot are then heard, but not seen, since that activity occurred outside of the camera's view. On camera, the other customer arises from the floor, leans against the counter, and tells a woman who was also in the store what occurred, repeating several times, that appellant said "give me your money" and that the incident "scared the * * * out of me."
{¶ 26} Officer Waddle testified that he has been a patrol officer in the Columbus Division of Police for ten years and was assigned on July 4, 2001 to the 6:00 a.m. to 2:00 p.m. shift in "the Franklinton area, kind of like the near west side." (Tr. at 67.) The officer stated he "was dispatched by radio to 1370 Sullivant Avenue on a report of a robbery in progress" and that, upon arriving, he recovered a firearm from the store owner, secured the scene, determined who the witnesses were, and separated them until a Columbus robbery detective arrived to conduct an interview. (Tr. at 68.) While viewing the security tape, Officer Waddle identified the customer who was at the counter when the fracas started as a man who said his name was Ronnie Rose.
{¶ 27} We look first to the question of venue. The Ohio Constitution guarantees an accused a speedy trial by an impartial jury in the county in which the offense is alleged to have been committed. State v. Woodson (Feb. 5, 1998), Ross App. No. 97-CA-2306, quoting State v. Headley (1983), 6 Ohio St.3d 475, 477. While not an essential element of the crime charged, venue is a matter that the state must prove beyond a reasonable doubt in order to sustain a criminal conviction. State v. Heestand (Apr. 27, 1998), Stark App. No. 1997CA00227, citing Headley. However, a defendant waives the right to challenge venue when the issue is raised for the first time on appeal. State v. Dumas (Feb. 18, 1999), Franklin App. No. 98AP-581. Where, as here, the appellant did not specifically argue the insufficiency of proof of venue in making his motion for judgment of acquittal at trial, it would be proper to consider proof of venue waived; however, we find it appropriate to consider the argument under a plain error analysis since the failure to prove venue does affect a substantial right. Woodson.
{¶ 28} The test for noticing plain error is whether or not the outcome of the trial would clearly have been otherwise except for the error. State v. Stallings (2000), 89 Ohio St.3d 280, 285; State v. Brust (Mar. 28, 2000), Franklin App. No. 99AP-509. "[N]otice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice." State v. Hairston (Sept. 28, 2001), Franklin App. No. 01AP-252, quoting State v. Lumpkin (Feb. 25, 1990), Franklin App. No. 91AP-567.
{¶ 29} The record in this case includes no direct testimony that the offense occurred in that part of the city of Columbus that is within the boundaries of Franklin County, Ohio. Nonetheless, "it is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged" in the charging instrument. State v. Roberts (Nov. 14, 1985), Franklin App. No. 85AP-520, quoting State v. Gribble (1970),24 Ohio St.2d 85, paragraph two of the syllabus. Here, the testimony from Officer Waddle that he was employed by the city of Columbus, assigned to the Franklinton area on the near west side, and that he was dispatched to a specific address on Sullivant Avenue constitutes circumstantial evidence of venue. The jury, and the court, also had the benefit of viewing a tape that showed steady store traffic, including police officers, from which reasonable inference could be drawn that the location of the store is an urban, not rural or suburban, setting. Moreover, there is no evidence to suggest that the offense occurred outside Franklin County. Dumas, at 11.
{¶ 30} Our review of the entire record leads us to conclude that the state presented sufficient circumstantial evidence as to the location of the crime, that is, the venue, to allow the case to be considered by the jury. Therefore, the trial court did not commit plain error in overruling appellant's Crim.R. 29 motion for judgment of acquittal in relation to that issue. The proof of venue in this case is as strong as the evidence previously considered by this court in Dumas and Roberts, and by the Fourth District Court of Appeals in Woodson. See, also, State v. Keeling, Hamilton App. No. C-010610, 2002-Ohio-3299, at ¶ 23; State v. Dixon (Nov. 8, 2000), Summit App. No. 19971; and State v. Combs (Jan. 28, 2000), Greene App. No. 98CA137. Accordingly, we likewise conclude that the jury did not lose its way in deciding that the offense occurred within the bounds of Franklin County, Ohio. The jury's finding on venue is not against the manifest weight of the evidence.
{¶ 31} We look next to the element of force. Arguing that the evidence was insufficient to establish that he used force or threat to commit the acts comprising an abduction, appellant contends that the video surveillance tape does not show appellant using any force to restrain the liberty of the other customer. R.C. 2901.01(A)(1) defines "force" to mean "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Examples of acts that Ohio courts have held to fall within the statutory definition of "force" include: pushing, In re: Mills (June 21, 2002), Ashtabula App. No. 2001-A-0028, and State v. Calhoun (Nov. 14, 1991), Cuyahoga App. No. 59370; striking and pushing a store employee, State v. Morgan (Jan. 13, 2000), Franklin App. No. 99AP-307; and a personal touching and "bodily jolt under my arm" incidental to snatching a purse, State v. Wynn (June 11, 1998), Franklin App. No. 97APA09-1203.
{¶ 32} To "restrain the liberty of another person" is an element common to kidnapping, abduction and unlawful restraint as those offenses are defined in R.C. 2905.01, 2905.02 and 2905.03, respectively. Proof of the restraint of another's liberty does not need to show that such restraint was of a particular duration, State v. Basterfield (Feb. 7, 1996), Lorain App. No. 94CA005985; or was accomplished in a particular manner. State v. Wilson (Nov. 2, 2000), Franklin App. No. 99AP-1259. "[E]ven ' "momentary" restraint may qualify as abduction, if it produces the required risk of physical harm to or fear in the victim.' " State v. Swearingen (Aug. 20, 2001), Clinton App. No. CA2001-01-005, quoting State v. Saylor (May 12, 1995), Champaign App. No. 94CA10. Restraint of liberty has been construed to mean "to limit one's freedom of movement in any fashion for any period of time." State v. Wingfield (Mar. 7, 1996), Cuyahoga App. No. 69229.
{¶ 33} The testimony by Hussein that appellant grabbed the other customer, tried to hide behind him, and threw him on the floor, when viewed in a light most favorable to the prosecution, was by itself sufficient to survive appellant's Crim.R. 29 motion. That testimony, together with the images on the security tape, including the other customer's reactions,[3] would, as a matter of law, permit a rational trier of fact to find beyond a reasonable doubt that appellant restrained the other customer of his liberty by force or threat under circumstances that created a risk of physical harm to the victim or placed the other person in fear. While appellant argues that the tape shows an absence of force or physical restraint and is inconsistent with Hussein's testimony, the resolution of such perceived inconsistencies falls properly within the jury's province. This argument addresses the weight of the evidence and not its sufficiency. Moreover, we do not conclude that the jury lost its way in choosing to discount the defense theory that appellant's contact with the customer was accidental. Credibility is within the jury's province. Substantial credible, competent evidence exists to support the jury's verdict. Our review of the record does not identify inconsistencies of such significance that would prevent reasonable minds from finding the elements of abduction proved beyond a reasonable doubt. The jury's conclusion regarding the use of force and restraint is not contrary to the manifest weight of the evidence.
{¶ 34} The third argument offered by appellant in support of his first, second and fifth assignments of error is that the prosecution failed to prove that he abducted a person named Ronnie Rose because the testimony that identified the victim was inadmissible hearsay. Officer Waddle testified that the victim "said his name was Ronnie Rose." (Tr. at 69.) We assume that the city offered it to prove the truth of the assertion, that Ronnie Rose was indeed his name. Thus, that testimony falls within the definition of hearsay stated in Evid.R. 801(C) and is subject to exclusion pursuant to Evid.R. 802. But, even though we view the identification testimony as impermissible hearsay, we cannot find that the trial court erred by admitting it.
{¶ 35} We conclude that appellant was not prejudiced by admission of that testimony because the name of the victim is not an essential element of an abduction. That offense requires proof that the accused knowingly restrained the liberty of another person by force or threat under circumstances that create a risk of physical harm to the victim or place the other person in fear. The omission of the name of the victim from an indictment does not invalidate it as a legally sufficient charging instrument. State v. Bonilla (Mar. 2, 2001), Greene App. No. 99CA0118, citing State v. Phillips (1991), 77 Ohio App.3d 663. Similarly, proof of the identity of the alleged victim is not required when it is not an essential element of the offense. Here, the court and jury had the somewhat unique opportunity to watch on the store security tape the alleged crime as it was being committed. The state presented sufficient evidence to establish the existence of another person whose liberty was restrained by appellant. Thus, the court properly denied the Crim.R. 29 motion, and the jury's conclusion that appellant did indeed restrain another individual's liberty, regardless of that person's name, was not against the manifest weight of the evidence.
{¶ 36} For the reasons discussed, appellant's first, second and fifth assignments of error are not well-taken and are overruled.
{¶ 37} In his third assignment of error, appellant contends that certain remarks by the prosecuting attorney during closing arguments constituted prosecutorial misconduct that deprived him of a fair trial. Appellant specifically complains about two statements made by the prosecutor during closing arguments. The first of these was: "We also have to prove venue. You heard the address, that it happened at 1370 Sullivant Avenue, here in Columbus. That is not in dispute." (Tr. at 97.) Appellant maintains that this line of argument invited the jury to consider matters outside the evidence adduced at trial because there was no direct testimony in the record tending to establish that the offense occurred within the boundaries of Franklin County, Ohio. The second statement, made during rebuttal, was: "We know what these convenience stores are. We have all been in them. They are robbed all the time." (Tr. at 113.) The prosecutor made that statement while encouraging the jury to exercise common sense in evaluating the evidence. Appellant suggests that there was no basis in the evidence to support this general assertion and that the comment by the prosecutor was designed and made to inflame the jury, and to imply that appellant was a common thief. Appellant argues that, even though the trial court sustained his attorney's objection to the latter comment, the court did not offer a curative instruction to assure that the jury would disregard it.
{¶ 38} Generally, conduct of a prosecuting attorney at trial is not grounds for reversal unless the conduct deprives the defendant of a fair trial.
{¶ 39} "* * * In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty. * * * The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. * * *" See Willard, at 773, quoting State v. Bruce (Sept. 25, 1997), Cuyahoga App. No 70982.
{¶ 40} We must decide whether the prosecutor in this case, who is permitted to zealously seek conviction, has, in an effort to secure an edge, crossed the line of propriety and thereby deprived appellant of a fair trial. Id. at 777. A reviewing court must assess allegedly improper conduct in the context of the entire case in order to decide if the right to a fair trial has been abridged. Id. at 776, citing Freeman, at 420.
{¶ 41} Considering the prosecutor's comment about proof of venue within the context of the entire record, we do not find that the prosecutor crossed the line of propriety, nor do we conclude that the comment deprived appellant of a fair trial. As noted in our disposition of the first, second and fifth assignments of error, enough circumstantial evidence of venue was properly in the record to support a conviction. The statement quoted was fair advocacy, summarizing particulars that had been introduced as evidence. The conclusion that the particular evidence of venue "is not in dispute" may not be technically accurate, but its inclusion in the prosecutor's closing remarks did not deprive appellant of a fair trial.
{¶ 42} We view the prosecutor's comment in rebuttal argument concerning the general nature of convenience stores differently. Because there was no evidence of the frequency of robberies at convenience stores and, more importantly, because such evidence, if offered, would be entirely irrelevant to issues of guilt or innocence in this case, any inference that the frequency of robberies was somehow probative of appellant's guilt introduced the potential dangers of prejudice and confusion into the jury's deliberations in these proceedings. See Willard, at 775. However, the trial court correctly diffused those potential dangers by sustaining the objection of appellant's trial counsel and in subsequently instructing the jury about the arguments of counsel. In the absence of a request for a contemporaneous curative instruction, we see no prejudicial error.
{¶ 43} While the trial court did not, at the point in time it sustained the objection, interrupt the prosecutor's argument to make specific curative instructions, the court did charge the jury at the conclusion of the trial that: "The evidence does not include the indictment or opening statements or closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence." (Tr. at 130.) This instruction was consistent with and supplemental to the instruction given to the jury at the onset of the trial that "[i]t is important to remember * * * that the attorneys are not witnesses; and since it is your duty to decide this case solely on the evidence which you see or hear in this courtroom, you must not consider as evidence any statement by any attorney at any time during this trial." (Tr. at 30.) These instructions by the court, which we must assume the jury heard and followed, were sufficient to minimize any potential prejudice to appellant and to assure that he was not deprived of a fair trial by the prosecutor's conduct.
{¶ 44} For these reasons, appellant's third assignment of error is likewise overruled.
{¶ 45} In his fourth assignment of error, appellant contends that he was denied effective assistance of counsel in that his trial counsel failed to expressly argue a failure of proof of venue in support of the Crim.R. 29 motion for judgment of acquittal at the close of the evidence. Reversal of a conviction for ineffective assistance of counsel requires that appellant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive him of a fair trial. State v. Issa (2001),93 Ohio St.3d 49, 67, citing Strickland v. Washington (1984), 466 U.S. 668. To be deficient, counsel's performance at trial must have fallen below an objective standard of reasonable representation. State v. Goodwin (1999), 84 Ohio St.3d 331, 335. In addition, one claiming that trial counsel's performance was deficient must show that he suffered prejudice as the result. Id. To establish prejudice, appellant must prove the existence of a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. Id., citing State v. Bradley (1989), 42 Ohio St.3d 136, 142. We have already decided that the circumstantial evidence of venue presented in this case supports a finding, beyond a reasonable doubt, that the offense occurred within the boundaries of Franklin County, Ohio. Thus, appellant can establish neither that his counsel's performance fell below an object standard of reasonable representation, nor that he suffered prejudice as the result of any omission by counsel. The fourth assignment of error is overruled.
{¶ 46} In support of his final assignment of error, appellant contends that the trial court improperly instructed the jury by failing to include an instruction on unlawful restraint as a lesser-included offense of abduction. This court has previously determined that both abduction and unlawful restraint are lesser-included offenses of kidnapping. State v. Kroesen (Nov. 16, 2000), Franklin App. No. 00AP-48, citing State v. Joyner (Mar. 23, 1999), Franklin App. No. 98AP-785, which applies the three-part test established in State v. Deem (1998), 40 Ohio St.3d 205, paragraph three of the syllabus. See, also, 1974 Committee Comment to H.B. 511 pertaining to R.C. 2905.03. ("This section defines the most minor in the trilogy of offenses beginning with kidnapping, and provides criminal sanctions against conduct which would ordinarily amount to grounds for a civil action for false arrest or imprisonment.") "There is no question that unlawful restraint is a lesser abduction." State v. Jaryga (Dec. 28, 2001), Lake App. No. 99-L-179, citing State v. Kutnar (Sept. 30, 1999), Lake App. No. 98-L-117.
{¶ 47} However, a trial court should give an instruction on a lesser-included offense only when the evidence presented at trial is such that the jury could both reasonably acquit the accused of the greater charged offense and convict the accused of the lesser-included offense. Kutnar. "[A] jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." (Emphasis sic.) State v. Shane (1992), 63 Ohio St.3d 630, 632-633. Review of a trial court's decision not to charge, as requested by a defendant, on a lesser-included offense is undertaken on an abuse of discretion basis. State v. Jonas (Mar. 6, 2001), Athens App. No. 99CA38.
{¶ 48} In this case, appellant argues that he neither used force nor restrained the other customer, stating the evidence shows "[a]ppellant did not use the other store customer as a shield or engage in any other conduct that created a restraint in his liberty." He characterizes the videotape evidence as establishing he "stumbled behind a customer when store owner Hussein began to brandish his weapon." Still, he concludes that an instruction on the lesser-included offense of unlawful restraint was appropriate since his "actions may have restrained the customer, even in the absence of force or a threat of force," and because the jury "could have found that he acted willfully in stepping behind the unfortunate store customer, but that he did not use force in carrying out this act."
{¶ 49} In Jonas, the accused was an inmate at the Southeast Ohio Regional Jail convicted of abduction for cornering and forcefully detaining a corrections officer in his cell by swinging a mop-wringer at the unarmed guard. The prisoner asserted at trial that he had hurt his back and sat down, physically, but not intentionally, blocking the officer from leaving the cell. Jonas, at 17. In upholding the trial court's decision not to instruct the jury on the elements of unlawful restraint as a lesser-included offense of abduction, Jonas recognized the broad discretion afforded a trial court in making that determination, Id. at 12; and stated: "[A]ppellant either did intend to restrain Officer Menegay's movement, and did so by force or threat, or he did not intend at all to restrain Menegay's movement." (Emphasis sic.) Id. at 17.
{¶ 50} Following a similar analysis, we conclude in this case that the trial court did not abuse its discretion by declining to instruct the jury on the elements of unlawful restraint as a lesser-included offense of abduction. The state presented sufficient evidence to permit the jury to convict appellant of the greater offense of restraining the liberty of the other customer by force, that is, by pushing him. The jury was entitled to determine whether appellant knowingly pushed or grabbed the customer, as opposed to the contact being the result of an accident. If they believed the latter, appellant was entitled to an acquittal, not an instruction on a lesser offense. The evidence is not such as would reasonably support both an acquittal of abduction and a conviction of unlawful restraint. Therefore, the trial court's instructions in this case were correct. State v. Lovelace (1999), 137 Ohio App.3d 206, at 223. The instructions were neither erroneous, prejudicial nor an abuse of discretion. The trial court's failure to instruct the jury concerning unlawful restraint as a lesser-included offense did not constitute error. Appellant's sixth assignment of error is overruled.
{¶ 51} Having overruled appellant's six assignments of error, the judgments of the Franklin County Court of Common Pleas are affirmed.
Judgments affirmed.
LAZARUS and BROWN, JJ., concur.
HARSHA, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.
[1] Franklin County Court of Common Pleas Case No. 01CR-07-3933, Tenth District Court of Appeals Case No. 02AP-33.
[2] Franklin County Court of Common Pleas Case No. 01CR-10-6311, Tenth District Court of Appeals Case No. 02AP-34.
[3] The store security tape was played twice for the jury without objection. Defense counsel played the tape a third time during closing argument and relied upon its content to encourage the jury to find that appellant did not threaten force against the store owner in attempting or committing a theft offense. Counsel argued:
"* * * You heard Ronnie Rose, without a motivation, without a bias, a perceived bias, without the benefit of an interview by a police officer say spontaneously on more than one occasion his account of what occurred at that moment. * * *" (Tr. at 104.)